John Richard GREEN, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–93–00145–CR.

Court of Appeals of Texas, at Texarkana.

Submitted Oct. 6, 1994.

Decided Nov. 9, 1994.

Mark L. Welker, Quitman, for appellant.

Markus D. Taylor, County Atty. of Wood County, Henry Whitley, Asst. Dist. Atty., Quitman, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

A jury convicted John Richard Green of murder and set his punishment at life imprisonment and a $10,000.00 fine. On appeal he

raises three grounds for reversal: (1) the trial court denied his right of compulsory process by failing to require a witness who asserted her right against self-incrimination to testify, or to assert her right personally rather than through her attorney; (2) the trial court improperly denied his requested charge regarding the voluntariness of his written statement; and (3) the trial court improperly denied his requested charge on the lesser included offenses of involuntary manslaughter and criminally negligent homicide. We find no error and affirm the judgment.

Wood County Sheriff's Deputy Jerry Hirsch responded to a 911 call reporting a slaying at a house on Wood County Road 3289. There, Hirsch met Captain Fortner, also with the sheriff's department. During a search of the house, they discovered the body of Pauline Green on the living room sofa. She had been shot in the head.

Green, his wife Carolyn, and their two children also were at the house. Green told the officers he was Pauline Green's son and that he, his wife, and their two children shared the house with his mother. He said that the night before he and his wife and children left the house about 6:30 and drove to nearby Mineola to shop. They spent the night in Mineola with his wife's mother and returned to the house about 8:30 the next morning. When they returned, Green discovered his mother's body and called 911.

Hirsch and Deputy Jim Roberts interviewed Green at the house and later at the sheriff's department. Green later signed a statement in which he said he and his mother had argued at about 5:00 p.m. on March 13. He and his wife and children got in the truck, drove to the front gate, and parked. He then returned to the house. He entered and found his mother asleep on the sofa. He placed a loaded 20–gauge shotgun against his mother's head while she slept and shot her.

Green first complains that the court deprived him of his right of compulsory process by failing to force his wife to testify as a witness on his behalf or to require her to assert her right against self-incrimination personally rather than through her attorney.

A defendant has a right of compulsory process for favorable witnesses. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX.CODE CRIM.PROC.ANN. art. 1.05 (Vernon 1977). The guarantee of compulsory process permits the defendant to use the power of the law to compel witnesses to attend and testify at trial. *Gonzalez v. State,* 714 S.W.2d 19, 25 (Tex.App.—Houston [1st Dist.] 1985, no pet.). The constitutional privilege against self-incrimination, however, overrides a defendant's right to compulsory process. *Bridge v. State,* 726 S.W.2d 558, 567 (Tex. Crim.App.1986).

When Green called his wife to testify she refused, asserting her right against self-incrimination. She did not speak herself, but let her attorney articulate the privilege for her. Green had expected his wife to testify about the stormy relationship between himself and his mother and about the verbal abuse his mother directed at him.

Neither Green nor the court could force Carolyn Green to testify over her Fifth Amendment right against self-incrimination. The right of compulsory process guarantees the right to secure witnesses at the trial; it does not guarantee the nature or quality of the witness's testimony, and it does not override a witness's right against self-incrimination.

Green also contends that the court should have required his wife to personally assert her privilege against self-incrimination. We may review only those complaints that were brought to the trial court's attention in time for that court to avoid or correct the errors. This rule applies to constitutional errors. *Rogers v. State,* 640 S.W.2d 248, 264 (Tex.Crim.App. [Panel Op.] 1981). Green did not ask the trial court to require his wife to claim her Fifth Amendment privilege personally rather than through her attorney. Thus, nothing is preserved for review.

Green also complains that the trial court committed reversible error by refusing his requested jury charge regarding the voluntariness of his written statement.

Green filed a written motion to suppress his written statement. A pretrial hearing was held to determine whether Green gave the statement voluntarily. The State offered the testimony of Deputy Jim Roberts, who took the statement; Deputy Jerry Hirsch, who witnessed the statement; and Deputy Mark Gagliardo, who saw Green during part of the interrogation. Green offered no evidence at the hearing. The trial court found that Green gave the statement voluntarily and overruled the motion to suppress. During the trial and in the jury's presence, the State offered the statement into evidence. Green's counsel responded, "No objections."

When a defendant unsuccessfully contests a written statement's admissibility before trial, his affirmative statement during trial that he does not object to its introduction waives any error, and nothing is preserved for review. *Moody v. State,* 827 S.W.2d 875, 889 (Tex.Crim.App.1992); *Dean v. State,* 749 S.W.2d 80, 82–83 (Tex.Crim.App.1988).

■ Green, having secured a pretrial ruling on his objections to the written statement, was not required to renew his objection during trial. Tex.R.App.P. 52(b). His affirmative statement that he had no objection, however, waived any error.

Green also complains because the trial court denied his requested charge on the lesser included offenses of involuntary manslaughter and criminally negligent homicide.

■ The trial court should submit a charge regarding a lesser included offense if the proof needed to establish the charged offense includes the proof of the lesser offense and the record includes some evidence that, if the defendant is guilty of anything, he is guilty only of the lesser offense. *Royster v. State,* 622 S.W.2d 442, 446 (Tex.Crim.App. [Panel Op.] 1981). An offense is a lesser included offense if it differs from the offense charged only in that a less culpable mental state suffices to establish its commission. Tex.Code Crim.Proc.Ann. art. 37.09 (Vernon 1981). Involuntary manslaughter and criminally negligent homicide are lesser included

offenses of murder. *Thomas v. State,* 699 S.W.2d 845, 847 (Tex.Crim.App.1985); *Brooks v. State,* 548 S.W.2d 680, 683 (Tex. Crim.App.1977).

■ A person commits involuntary manslaughter if he recklessly causes another's death. Tex.Penal Code Ann. § 19.05.[1] A person acts recklessly if he is conscious of the risk he has created and consciously disregards the risk by engaging in the proscribed conduct. Tex.Penal Code Ann. § 6.03(c) (Vernon 1994). A person commits criminally negligent homicide if he causes another's death by criminal negligence. Tex.Penal Code Ann. § 19.07.[2] A person acts with criminal negligence when he should be aware of a substantial and unjustifiable risk he has created. Tex.Penal Code Ann. § 6.03(d) (Vernon 1994).

■ Green testified that he did not recall shooting his mother. In his written statement he said he shot his mother after an argument. Neither Green's testimony, his written statement, nor any other part of the record offers evidence that he acted recklessly or negligently. Thus, the trial court properly refused the requested charges.

The judgment is affirmed.

---

**1.** Amended by Act of May 29, 1993, 73rd Leg., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3586, 3614, current version found at Tex.Penal Code Ann. § 19.04 (Vernon 1994).

**2.** Amended by Act of May 29, 1993, 73rd Leg., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3586, 3614, current version found at Tex.Penal Code Ann. § 19.05 (Vernon 1994).