TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00238-CR







Leonard Lanier, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 0944611, HONORABLE CHARLES CAMPBELL, JUDGE PRESIDING







PER CURIAM


 A two-count indictment accused appellant of retaliation and aggravated assault. Act
of May 28, 1989, 71st Leg., R.S., ch. 557, § 1, 1989 Tex. Gen. Laws 1857 (Tex. Penal Code
Ann. § 36.06(a), since amended); Act of May 22, 1991, 72d Leg., R.S., ch. 334, § 2, 1991 Tex.
Gen. Laws 1380, 1381 (Tex. Penal Code Ann. § 22.02(a)(4), since amended) (hereafter "former
section 22.02"). A jury found appellant not guilty of retaliation but guilty of aggravated assault,
for which it assessed punishment at imprisonment for nine years and a $1000 fine. We will
affirm.


1. Sufficiency of the evidence.

 The events giving rise to this offense began on January 11, 1994, the day appellant
shot and killed Jody, Daniel Berlanga's dog. Berlanga lived across the street from appellant in
an unincorporated area in northern Travis County. Appellant shot the dog because he believed
it had killed several of the rabbits appellant kept in cages in his back yard. Berlanga called the
sheriff's department after the shooting and appellant was subsequently charged with cruelty to an
animal. This incident poisoned the relationship between the two men. Berlanga testified that he
and appellant would exchange unpleasant remarks across the street and that appellant threatened
him on several occasions.

 On the afternoon of April 2, 1994, appellant and Berlanga encountered each other
in a convenience store near their homes. Berlanga testified that "a few words [were] exchanged
back and forth" including an unflattering reference to Berlanga's Mexican ancestry. This
exchange continued outside the store, where each man shouted profane and vulgar insults at the
other. Then, as Berlanga drove past appellant, who was pumping gasoline into his pickup truck,
appellant squirted gasoline at him. Berlanga stopped, got out of his car, and took a few steps
toward appellant. According to Berlanga, appellant then reached into his pocket and pulled out
a small caliber handgun. Appellant pointed the pistol at Berlanga and said, "Stay out of my
business or I'll kill you." Berlanga testified that he believed this threat was in retaliation for
Berlanga filing the animal cruelty charge. Berlanga also believed appellant would carry out the
threat and stated that it placed him in fear of imminent bodily injury. Berlanga returned to his
car, drove home, and called the sheriff's department.

 In his own testimony, appellant confirmed that he and Berlanga shouted profanities
at each other inside and outside the convenience store. According to appellant, Berlanga sought
him out as he was pumping gasoline and approached him in an angry fashion. Appellant "flung"
gasoline toward Berlanga, who continued to walk toward him. Appellant then reached into his
truck's tool box and seized the pistol he kept there. Appellant testified that he did not withdraw
the pistol from the box or point it at Berlanga, who returned to his car and drove away.

 When appellant returned home, sheriff's deputies were across the street talking to
Berlanga. Appellant, who claimed not to notice the officers, did not acknowledge their shouts and
entered his house. After the deputies pounded on appellant's door for several minutes, another
occupant of the house admitted them. The officers found appellant hiding in a bedroom closet. 
The pistol was hidden in the cushions of a couch.

 In his first point of error, appellant contends the evidence is legally insufficient to
sustain the conviction for aggravated assault. Before turning to this question, we briefly address
a second contention that appellant multifariously asserts under this point. Appellant urges that the
offenses of aggravated assault, reckless conduct, terroristic threat, and disorderly conduct are in
pari materia and that he should have been prosecuted for terroristic threat rather than aggravated
assault. See Tex. Penal Code Ann. § 22.07 (West 1994). Appellant did not move to quash the
aggravated assault count or otherwise present this contention to the district court. We therefore
hold that it was not preserved for review. Tex. Code Crim. Proc. Ann. art. 1.14(b) (West Supp.
1996); Tex. R. App. P. 52(a). (1)

 To convict appellant of aggravated assault under the court's charge, the jury was
required to find that he intentionally or knowingly threatened Berlanga with imminent bodily
injury by using a deadly weapon. Appellant's challenge to the legal sufficiency of the evidence
raises the question whether, after viewing all the evidence in the light most favorable to the
verdict, any rational trier of fact could have found these essential elements of the offense beyond
a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979); Geesa v. State, 820 S.W.2d 154
(Tex. Crim. App. 1991); Griffin v. State, 614 S.W.2d 155 (Tex. Crim. App. 1981). 

 Appellant contends the evidence does not prove a threat of imminent bodily injury,
but merely shows a conditional threat to kill Berlanga at some time in the future should he fail to
mind his own business. Appellant relies on Devine v. State, 786 S.W.2d 268 (Tex. Crim. App.
1989). In that case, the defendant made a series of telephone calls to her former husband
demanding money and threatening to bomb his house or blow his head off if he did not comply. 
The complainant made numerous payments to the defendant in response to these demands. The
court held that these facts did not support a conviction for robbery because there was no evidence
to show that the defendant threatened or placed the complainant in fear of imminent bodily injury. 
The court observed that the defendant's threats were of future harm only, and emphasized that
there was no evidence that the defendant was armed at any of her meetings with the complainant
or that the complainant was placed in fear of imminent bodily injury by the defendant's conduct.

 Appellant's conduct in this cause is easily distinguished from the defendant's
conduct in Devine. Appellant did more than merely threaten Berlanga with future harm. 
Appellant punctuated his threat to kill Berlanga by pointing a pistol at him. We hold that a
rational trier of fact could find beyond a reasonable doubt that appellant, by pointing a pistol at
Berlanga and threatening to kill him if he did not "stay out of [his] business," intentionally or
knowingly engaged in conduct that placed Berlanga in fear of imminent bodily injury.

 Appellant also urges that the State failed to prove he "used" a deadly weapon within
the meaning of the aggravated assault statute. Appellant argues that section 22.02, as it read at
the time of this offense, distinguished between threatening another with a deadly weapon and
using a deadly weapon. We are unpersuaded by appellant's reasoning, which is not applicable
to this cause in any event because it is based on those portions of former section 22.02 dealing
with assaults on peace officers. Former § 22.02(a)(2), (c). We previously rejected an argument
that equated "use" of a deadly weapon with "firing." May v. State, 660 S.W.2d 888, 889 (Tex.
App.--Austin 1983), aff'd 722 S.W.2d 699 (Tex. Crim. App. 1984). A rational trier of fact could
find beyond a reasonable doubt that when appellant pointed the pistol at Berlanga and threatened
to kill him, he intentionally or knowingly used a deadly weapon to place Berlanga in fear of
imminent bodily injury. (2) Point of error one is overruled.

 In his second point of error, appellant contends the evidence, if legally sufficient,
is nevertheless factually insufficient to sustain the jury's verdict. When conducting a factual
sufficiency review, we do not view the evidence in the light most favorable to the verdict. 
Instead, we consider all the evidence equally, including the testimony of defense witnesses and
the existence of alternative hypotheses. Orona v. State, 836 S.W.2d 319 (Tex. App.--Austin 1992,
no pet.). We will set aside a verdict for factual insufficiency only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Clewis v. State, No.
450-94 (Tex. Crim. App. Jan. 31, 1996); Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin
1992, pet. ref'd as untimely filed).

 In his argument under this point, appellant does not refer us to evidence of
innocence that militates against the jury's verdict. Instead, repeating the arguments previously
discussed, he merely urges that the jury's conclusion that he used a deadly weapon to threaten
imminent bodily injury was unreasonable. In conducting a factual sufficiency review, however,
we do not substitute our judgment for that of the jury and may not set aside a jury's verdict
merely because we feel that a different result is more reasonable. Clewis, slip op. at 13-14. 
Having considered all the evidence equally, we do not find the jury's verdict to be so contrary to
the overwhelming weight of the evidence as to be clearly wrong and unjust. Point of error two
is overruled.


2. Affirmative finding.

 Appellant's next point of error complains that the district court erred by submitting
to the jury the question whether appellant used a deadly weapon in the commission of this offense. 
The jury answered this question in the affirmative and the court entered this finding in its
judgment. See Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (West Supp. 1996). 

 Appellant first urges that by permitting the jury to make the affirmative finding that
he used a deadly weapon in the commission of the offense, the court authorized "double
enhancement." He argues that under former section 22.02(a)(4), a simple misdemeanor assault
was "enhanced" to a third degree felony aggravated assault by the defendant's use of a deadly
weapon, and that it was not permissible to further "enhance" the punishment for aggravated
assault with an affirmative finding that a deadly weapon was used in the commission of the
offense. Appellant's only authority for this argument, Busic v. United States, 446 U.S. 398, 404
(1980), is based on federal criminal statutes and has no application to this cause. Furthermore,
an affirmative finding pursuant to article 42.12, section 3g(a)(2), unlike the federal statute at issue
in Busic, does not increase the punishment range applicable to the offense. Therefore, the
affirmative finding does not constitute an unlawful "double enhancement" of appellant's
punishment.

 Appellant's second argument under this point of error is that the affirmative finding
in this cause violates the holding in Narron v. State, 835 S.W.2d 642 (Tex. Crim. App. 1992),
and Ex parte Petty, 833 S.W.2d 145 (Tex. Crim. App. 1992). In each of these cases, the
defendant was convicted of unlawfully possessing a deadly weapon and the trial court made an
affirmative finding that a deadly weapon was used in the commission of the offense. The Court
of Criminal Appeals held that the possession of a deadly weapon did not constitute its "use"
during the commission of the possessory offense. The court wrote, "[I]n order to `use' a deadly
weapon for affirmative finding purposes, the weapon must be utilized to achieve . . . the
commission of a felony offense separate and distinct from `mere' possession." Petty, 833 S.W.2d
at 145.

 Appellant's conviction for aggravated assault was not based on his mere possession
of a firearm. Nevertheless, appellant argues that the affirmative finding should not have been
authorized because the use of a deadly weapon was an essential element of the offense for which
he was convicted. Appellant asserts that to justify an affirmative finding, the deadly weapon must
be used in furtherance of a collateral felony that does not require the use of a deadly weapon.

 A similar effort to extend the holdings in Narron and Petty was considered by the
Court of Criminal Appeals in Tyra v. State, 897 S.W.2d 796 (Tex. Crim. App. 1995). The
defendant in Tyra was convicted of what is now called intoxication manslaughter after he caused
the death of a person by reason of his operation of a motor vehicle while intoxicated. See Tex.
Penal Code Ann. § 49.08 (West 1994). The jury found that the defendant used a deadly weapon,
his automobile, during the commission of the offense. Citing Narron and Petty, the defendant
argued that the affirmative finding was impermissible because, among other things, the use of an
automobile as a deadly weapon was an inherent element of the offense. The court rejected that
argument:


 Our opinions in Narron and Petty . . . do not stand for the
proposition that the phrase "used or exhibited a deadly weapon during commission
of a felony offense" necessarily means "used or exhibited a deadly weapon during
commission of an offense which does not otherwise require the use or exhibition
of a deadly weapon."


. . .


The fact that involuntary manslaughter under former Penal Code section
19.05(a)(2) is a felony offense which . . . always involves the use of a deadly
weapon does not change the meaning of these words. There is simply nothing in
the phrase "used a deadly weapon" to imply that it must always be used to commit
an "associated offense." 



Tyra, 897 S.W.2d at 798. 

 The district court did not err by authorizing the jury to make an affirmative finding
that appellant used a deadly weapon during the commission of the aggravated assault. Point of
error three is overruled.


3. Parole instruction.

 In points of error five and six, appellant contends the district court fundamentally
erred by failing to give the statutory instruction on the law of good time and parole. Tex. Code
Crim. Proc. Ann. art. 37.07, § 4(a) (West Supp. 1996). Appellant did not object to the charge
on this ground and must show that the omission of the parole instruction resulted in egregious
harm. Abdnor v. State, 871 S.W.2d 726, 731-32 (Tex. Crim. App. 1994); Almanza v. State, 686
S.W.2d 157, 171 (Tex. Crim. App. 1985) (opinion on rehearing).

 Appellant refers us to testimony adduced at the hearing on his motion for new trial,
in which he complained that the jury considered parole in assessing punishment. Jury foreman
Ernest Torres testified that the subject of parole came up during punishment deliberations when
a juror asked how much of the sentence appellant would serve in prison. Torres recalled, "I
believe we said it would be either a third to a half of the time of the sentence that was going to
be imposed." Torres testified that the discussion of parole was brief, that no one professed to
know the law regarding parole, that his punishment decision was not influenced by this discussion,
and that no one else on the jury appeared to have based his or her punishment decision on parole
considerations. Appellant also refers us to the affidavit of juror Maureen Warden attached to his
motion for new trial. This affidavit was not introduced at the hearing, however, and therefore is
not evidence. Rios v. State, 510 S.W.2d 326, 328-29 (Tex. Crim. App. 1974).

 It is common knowledge that inmates are released on parole, and neither the
mention of parole nor the discussion of it by the jury constitutes reversible error in itself. Beck
v. State, 573 S.W.2d 786, 789 (Tex. Crim. App. 1978). Appellant has not shown that any
member of the jury relied on any misstatement of the parole law by another juror, and in so doing
voted for a harsher punishment than the juror would have otherwise considered proper. See
Buentello v. State, 826 S.W.2d 610 (Tex. Crim. App. 1992). Nor has appellant demonstrated by
any other means how he was egregiously harmed by the district court's failure to include the
statutory parole instruction in its punishment charge. Points of error five and six are overruled.


4. Ineffective assistance of counsel.

 Appellant's final contention is that his attorneys at trial rendered ineffective
assistance during the punishment phase. The test for effectiveness of counsel at the punishment
stage of a noncapital trial is whether counsel was reasonably likely to render and rendered
effective assistance. Ex parte Craig, 825 S.W.2d 128, 130 (Tex. Crim. App. 1987); Ex parte
Cruz, 739 S.W.2d 53, 57-58 (Tex. Crim. App. 1987). In reviewing a claim of ineffective
assistance, we must indulge a strong presumption that counsel's conduct fell within the wide range
of reasonable professional assistance. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App.
1994).

 Appellant's attack on counsel centers on the handling of his application for
probation. Both the trial record and the testimony of counsel at the new trial hearing reflect that
counsel mistakenly believed that the application was self-proving. When informed by the court
that evidence of appellant's eligibility for probation was required, counsel called appellant to
testify to his lack of previous felony convictions. During cross-examination, appellant admitted
two previous misdemeanor convictions for attempted theft and driving while intoxicated. He was
also questioned by the State about several arrests, including arrests for assault and possession of
marihuana for which charges were pending. Appellant complains that his attorneys were
ineffective because they were unprepared to prove appellant's eligibility for probation and
therefore exposed him to prejudicial cross-examination regarding the extraneous offenses. 
Appellant also refers us to testimony by the jury foreman at the new trial hearing that appellant's
demeanor while testifying at the punishment stage contributed to the juror's belief that appellant
was a "loose cannon."

 While appellant proved that his attorneys did not understand the burden of proof
regarding probation eligibility, the record does not reflect that this altered the course of the trial. 
There is no evidence that another person could have testified to appellant's lack of prior felony
convictions. There is also no evidence that if appellant had not testified at the punishment stage,
the State would not have called another witness to prove his prior criminal record. See Tex. Code
Crim. Proc. Ann. art. 37.07, § 3(a) (West Supp. 1996). We note that the State gave notice before
trial of its intention to introduce evidence of extraneous offenses, as it was authorized to do under
article 37.07, section 3, even if appellant did not testify. Further, the jury foreman testified that
he believed the jury would have assessed the same punishment if appellant had not testified at the
punishment stage.

 Appellant turned down plea bargain offers that carried less onerous punishment than
that imposed by the jury. Appellant asserts that he rejected these offers because his attorneys told
him "mere exhibition" of the firearm, as opposed to "pointing" it, would have no punishment
consequences. The only evidence that counsel made such a statement is in appellant's affidavit
attached to the motion for new trial. Appellant did not testify at the new trial hearing and the
affidavit was not introduced in evidence. Rios, 510 S.W.2d at 328-29. In any event, appellant's
assertion was rebutted by the testimony of one of his trial attorneys, who testified that he
explained to appellant that, in the context of this cause, there was no legal distinction between
pointing the pistol at Berlanga and merely exhibiting it to him. Both attorneys testified that they
advised appellant that the State's plea offers were generous and urged him to accept. 

 Finally, appellant urges that his attorneys were ineffective because they did not
request the statutory instruction on good time and parole or object to its absence. The reason why
this instruction does not appear in the court's punishment charge is not shown by the record. The
reason counsel did not object is also not shown. Appellant has not demonstrated that counsel's
failure to object was the result of ignorance or carelessness rather than calculated trial strategy.

 Counsel's representation must be viewed in its totality. State v. Recer, 815 S.W.2d
730, 731 (Tex. Crim. App. 1991). Appellant has shown that counsel made errors, but he has not
overcome the presumption that counsel's representation was within the wide range of reasonable
professional assistance. Point of error four is overruled.

 The judgment of conviction is affirmed.


Before Chief Justice Carroll, Justices Aboussie and Kidd

Affirmed

Filed: June 26, 1996

Do Not Publish
1. No question of the district court's jurisdiction is presented since the other count of the
indictment alleged the felony offense of retaliation.
2. Appellant urges that his acquittal on the retaliation count necessarily means that the
jury found that he did not point the pistol at Berlanga. We disagree. To convict appellant
of retaliation, the jury was required to find that he pointed a firearm at Berlanga or
threatened to kill him in retaliation for his service as a witness in the animal cruelty case. 
The jury's verdict may reflect a finding that appellant's assault of Berlanga was not
motivated by retaliation.



t evidence of appellant's eligibility for probation was required, counsel called appellant to
testify to his lack of previous felony convictions. During cross-examination, appellant admitted
two previous misdemeanor convictions for attempted theft and driving while intoxicated. He was
also questioned by the State about several arrests, including arrests for assault and possession of
marihuana for which charges were pending. Appellant complains that his attorneys were
ineffective because they were unprepared to prove appellant's eligibility for probation and
therefore exposed him to prejudicial cross-examination regarding the extraneous offenses. 
Appellant also refers us to testimony by the jury foreman at the new trial hearing that appellant's
demeanor while testifying at the punishment stage contributed to the juror's belief that appellant
was a "loose cannon."

 While appellant proved that his attorneys did not understand the burden of proof
regarding probation eligibility, the record does not reflect that this altered the course of the trial. 
There is no evidence that another person could have testified to appellant's lack of prior felony
convictions. There is also no evidence that if appellant had not testified at the punishment stage,
the State would not have called another witness to prove his prior criminal record. See Tex. Code
Crim. Proc. Ann. art. 37.07, § 3(a) (West Supp. 1996). We note that the State gave notice before
trial of its intention to introduce evidence of extraneous offenses, as it was authorized to do under
article 37.07, section 3, even if appellant did not testify. Further, the jury foreman testified that
he believed the jury would have assessed the same punishment if appellant had not testified at the
punishment stage.

 Appellant turned down plea bargain offers that carried less onerous punishment than
that imposed by the jury. Appellant asserts that he rejected these offers because his attorneys told
him "mere exhibition" of the firearm, as opposed to "pointing" it, would have no punishment
consequences. The only evidence that counsel made such a statement is in appellant's affidavit
attached to the motion for new trial. Appellant did not testify at the new trial hearing and the
affidavit was not introduced in evidence. Rios, 510 S.W.2d at 328-29. In any event, appellant's
assertion was rebutted by the testimony of one of his trial attorneys, who testified that he
explained to appellant that, in the context of this cause, there was no legal distinction between
pointing the pistol at Berlanga and merely exhibiting it to him. Both attorneys testified that they
advised appellant that the State's plea offers were generous and urged him to accept. 

 Finally, appellant urges that his attorneys were ineffective because they did not
request the statutory instruction on good time and parole or object to its absence. The reason why
this instruction does not appear in the court's punishment charge is not shown by the record. The
reason counsel did not object is also not shown. Appellant has not demonstrated that counsel's
failure to object was the result of ignorance or carelessness rather than calculated trial strategy.

 Counsel's representation must be viewed in its totality. State v. Recer, 815 S.W.2d
730, 731 (Tex. Crim. App. 1991). Appellant has shown that counsel made errors, but he has not
overcome the presumption that counsel's representation was within the wide range of reasonable
professional assistance. Point of error four is overruled.

 The judgment of conviction is affirmed.


Before Chief Justice Carroll, Justices Aboussie and Kidd

Affirmed

Filed: June 26,